*The following opinions were delivered :
By the Chancellor.
If the conveyance to Henry Franklin was fraudulent, the judgments against Abraham Franklin and John Franklin were, at the time of the commencement of the chancery suit, legal liens upon the two thirds of the lots in question, devised to Abraham and John Franklin by the will of their father; and a conveyance by the sheriff, under executions upon those judgments, would at that time unquestionably have vested in the purchaser at the sheriff’s sale, such a title as to enable him at law to recover from the persons then in possession, under the contract of purchase, two thirds of the lots ; but, in a court of equity, a judgment which is only a general and not a specific lien upon the real estate of the debtor, will be so controlled as to protect the prior equitable rights of third persons against the legal lien of the judgments, and also against purchasers, under an execution thereon, chargeable with either actual or constructive notice of such equitable rights. Ex parte Howe, 1 Paige’s R. 125. Hampson v. Edelen, 2 Har. & Johns. R. 64. 1 Atkinson on Conv. 512. Where the vendee of the judgment debtor is in the actual possession of the premises, under a contract to purchase, executed prior to the docketing of the judgment, the purchaser at the sheriff’s sale will be chargeable with constructive notice of the equitable rights of such vendee, and will take the legal title, subject to the same, Tuttle v. Jackson, 6 Wendell, 213; Buck v. Halloway’s Devisees, 2 J. J. Marsh. R. 180; Chesterman v. Gardner, 5 Johns. Ch. R. 33; and in such a case, if the whole of the purchase money had been paid at the time of the recovery of the judgment, or had been specifically appropriated to the payment of prior incumbrances on the premises, there could be no doubt that the purchaser at the sheriff’s sale would be considered in equity as holding the legal estate in trust for the original vendee ; and upon a proper application to the court of chancery, he would be restrained from prosecuting a suit at law against such vendee, or his assigns, to recover the possession of the property.
As the legal title alone is in question in the present suit, it is not necessary here to express any definite opinion as to the *legal lien of a *449 judgment recovered against the vendor in a prior contract of sale upon the unpaid purchase money. In the state of Pennsylvania, where every equitable as well as legal interest in land is settled by action at law, it has been decided that a judgment against a vendor who has contracted to sell but has not received the whole purchase money, is a lien on the vendor’s interest; and that a purchaser under such judgment will stand in the place of the vendor, and will be entitled to the unpaid purchase money; and upon payment of the same, will be bound to make a deed to the vendee, according to the original agreement. Fasholt v. Reed, 16 Serg. & Rawle, 267. In Maryland, on the contrary, it appears to have been held, that the vendee who, subsequently to the recovery of a judgment against his vendor, but without any actual notice thereof, had paid over a balance of the purchase money, and taken a conveyance from such judgment debtor, was in equity entitled to protection against the claim on the part of the judgment creditor, to a legal lien upon the premises. Hampson v. Edelen, 2 Har. & Johns. R. 64. The last case, however, shows that a subsequent conveyance from the judgment debtor, in pursuance of his contract, does not at law overreach the judgment by relation, and that the vendee must resort to a court of equity to protect himself against a sale under the judgment, which would render the conveyance from his vendor, subsequent to the docketing of the judgment, inoperative in a court of law. This was also expressly decided in the case of Butts v. Chinn, in the court of appeals of Kentucky, 4 J. J. Marsh, R. 641, where the purchaser at the sheriff’s sale was permitted to recover in ejectment, on the ground that the conveyance from the vendor, which was executed after the lien of the judgment attached, although in -pursuance of a previous contract, was at law overreached by the subsequent sale under the judgment. A conveyance, therefore, of the legal estate to the vendee, in pursuance of the original contract, does not operate by relation back to a time when the vendee was not entitled to a deed by the terms of such contract, so as to divest the lien of an intermediate judgment against the holder of such legal estate. In the cases referred to on the argument, in which sheriffs’ deeds were *deemed to have relation back to the sale, so as to convey the legal right to the purchaser from that time, the sales had taken place previous to the passing of the act of 1820, giving time to the judgment creditor to redeem. The title of the purchasers to the property in those cases was derived from the sales and payment of the purchase money; and the sheriff’s deeds were only necessary, as the legal evidence of such sales, in consequence of the statute of frauds. In the present case, however, it is impossible that the conveyance from Henry Franklin should convey the legal estate by relation, so as to overreach the lien of these judgments, because the decree in the chancery suit is conclusive. So far as the lien of these judgments is concerned, the legal title to the premises in controversy never vested in the fraudulent grantee of A. and J. Franklin, but remained in themselves.
It was urged upon the argument, as a reason why these vendees should be permitted to pay the money, and take a conveyance from Henry Franklin as the ostensible owner pending the chancery suit, that it was impossible to protect themselves against the payment of the purchase money in the mean time. But if a judgment in this state is to be considered a legal as well as an equitable lien upon lands contracted to be sold, to the extent of the unpaid purchase-money, as I think it is, I see no difficulty in protecting the equitable rights of the vendee, not only against the judgment creditor, but also against the vendor. If the judgment creditor proceeds to enforce his lien by a sale of the land, the vendee may appear at the sale and give notice of his prior equitable rights, and the purchaser will then take the legal estate, subject to such prior equity ; and *451 if the vendee is in the actual possession of the land under his contract to purchase, even that formality will not be necessary, as the purchaser at the sheriff’s sale in such a case will be chargeable with constructive notice of those rights, which in equity is equivalent to actual notice. On the other hand, if the vendor insists upon the payment of the purchase money to himself, and refuses to permit it to be applied to the extinguishment of the encumbrance upon the land, the vendee may file a bill in equity for *a specific performance of the contract, making the judgment creditor, as well as the vendor, parties
thereto, so that the purchase money may be applied under the direction of the court, which will effectually protect him against the claims of both. In the present case, a similar bill, in the nature of a bill of interpleader, might have been filed by the vendees against the judgment creditor, and also against Embree and the parties to the conveyance, which is alleged to have been fraudulent ; and a payment into court, or a payment to either of the parties under the direction of the chancellor, in such suit, would have protected the rights of the vendees and would have entitled them to a conveyance of the legal estate from the holders thereof, freed from the lien of the judgments. Such was the course recommended by Serjeant Hill in a case somewhat similar, where judgments were supposed to be an equitable lien upon the unpaid purchase money, on the sale of an equitable estate. See 4 Mad. C. R. 508, note. The case of Bumpus v. Platner, 1 Johns. Ch. R. 213, referred to by the counsel of the plaintiff in error, on the argument, only decided that a purchaser under a conveyance with warranty, but who had not been disturbed in his possession, could not be discharged from the payment of the purchase money, on the ground of an alleged defect of title in his vendor. But even in a case of that kind, where the vendee was actually prosecuted by persons claiming a paramount title, Chancellor Kent enjoined the vendor from collecting the purchase money until the rights of the parties could be determined. Johnson v. Gere, 2 Johns. Ch. R. 546. Here the vendees were in equity bound to pay the purchase money for the two thirds of these lots to one or the other of two parties, both claiming a right to the same under S. Franklin, the vendor ; and until that controversy was determined, the vendees could not safely pay it to either. It was therefore a very proper case for a bill of interpleader, or rather a bill in the nature of a bill of interpleader, to settle the right to the unpaid purchase money, and for the transfer of the legal estate to the vendee, see Bedell v. Hoffman and others, 2 Paige’s R. 199; and as Embree, the survivor of S. Franklin, could at law have recovered the whole of the unpaid purchase money under the contracts, he would *have been a proper party to such a bill. The necessity of a resort to such a proceeding would unquestionably be very inconvenient and troublesome to the vendees. But it is one of the ordinary consequences of a contract for the purchase of real estate without paying over the purchase money immediately, and without obtaining a conveyance of the legal estate free from prior encumbrances. The case of the plaintiff in error is still harder here, if he is chargeable with constructive notice of the rights of the judgment creditors by the pendency of the chancery suit. As there is no doubt that the purchase money was paid over to the attorney of Embree and Henry Franklin in good faith, with no actual knowledge on the part of the vendees of the pendency of that suit, and with no suspicion that the conveyance from J. and A. Franklin was fraudulent, I proceed to consider the question as to effect of the chancer)*- suit upon the subsequently acquired rights of the vendees under the deed from Henry Franklin.
The vendees of S. Franklin and Embree were not necessary parties to the chancery suit, as it was not sought by that suit to deprive them of any legal or *453 equitable rights they had then acquired under their contracts. The whole object of that suit was to set. aside the fraudulent deed to H. Franklin, which prevented the complainant from enforcing his judgment against J. and A Franklin’s interest in the premises ; of course, subject to the equitable rights of these vendees, as they existed at the commencement of that suit. And I see nothing to prevent the plaintiff in error from enforcing those equitable rights, by a resort to the proper tribunal, at this time, even if the present judgment should be affirmed, as those equitable rights are not in any way affected by the decree. The principle is as old as the court of chancery itself, that the commencement of a suit there, which is duly prosecuted in good faith and followed by a decree, is constructive notice to every person who acquires an interest from the defendant in the subject matter of the suit pendente lite, of the legal and equitable rights of the complainant as charged in the bill and established by the decree. Chancellor Kent has examined this subject so fully, in the case of Murray v. Ballou, 1 Johns. *Ch. Rep. 556, that it would be a useless waste of time to. cite any other authorities than those he has there referred to, in support of this general principle. I may also add, that although this principle may sometimes operate harshly upon a purchaser who has no actual notice of the pending litigation, it seems to be essential to the due administration of justice. Hence it is that the legislature have not deemed it wise to abolish the principle ; although they have modified its use in a certain class of cases, by requiring a notice of the pendency of the suit, to be filed in the clerk’s office of the county where the lands in controversy are situated. 2 R. S. 174, § 43. But even this, like other constructive notices which have been found essential for the preservation of the legal and equitable rights of one party, will not always convey actual notice to others of the existence of those rights. It is certainly more convenient for most purchasers to search in the clerk’s office of the county where the lands lie, to ascertain the existence of a chancery suit affecting those lands, than to be obliged to resort to the files of the court for that purpose ; and probably the legislature would do an essential service to that class of community which stands most in need of such protection, if a law should be passed requiring every creditor who wishes to preserve a lien upon lands by the operation of a judgment or decree, to cause a transcript or copy of the docketing thereof to be filed, or entered in the clerk’s office of the county where such lands are situated. It is the duty of courts of justice, however, to administer the law as they find it; and the rights of these parties must be determined by the law as it existed at the time of the conveyances to Rowley and Boughton, in November, 1810, and June, 1811.
It was insisted in this case that the vendees were not chargeable with notice of the rights of the complainant, and the nature of the litigation, because the premises in question were not sufficiently described in the bill as one of the subjects of litigation in that suit. It might be a sufficient answer to this objection to say, there was sufficient in the bill to put a purchaser upon inquiry, which in equity is considered good constructive notice of the fact. In ancient times, when the complainant was permitted to take out and serve a subpoena *before the filing of his bill, it was even doubted whether the
purchaser was not chargeable with constructive notice of the complainant’s rights, and of the object of the suit, from the time of the service of the subpoena, provided a bill was afterwards filed and prosecuted to a decree. Sugden’s Law of Vend., 8 Lond. ed. 745. Piggott v. Nower, 3 Swanst. 535, note. Anon. 1 Vern. 318. In the present case, however, I think there was sufficient on the face of the bill to enable Rowley and Boughton to understand *454 the rights claimed by the complainant, and the nature of that litigation ; so far, at least,' as to satisfy them that they could not safely pay the balance of the purchase money to Henry Franklin, and take a conveyance from him for the premises now in controversy, pending that suit.
A purchaser is always supposed to be cognizant of the contents of the conveyance under which his grantor derived his title to the premises ; and if the purchaser cannot make out his title except through a deed which leads him to another fact, either by description of the parties, recital, or otherwise, he will be deemed cognizant thereof. Sugden’s Law of Vend. 756. Eden’s Ch. Rep. 356, note a. Here the purchasers, pendente lite, were about to pay the purchase money to Henry Franklin, and to take a title from him as the assignee of two thirds of the premises which belonged to Samuel Franklin at the time of his death. They would of course look to this deed from J. and A. Franklin, which was then on record in the clerk’s office of the country of Ontario, and which bore date on the 29th March, 1808. They would then look to the will of S. Franklin, under which the grantors in that deed derived title in September, 1807. Then, by examining the complainant’s bill in chancery they would have found, among other things, that the Franklins stopped payment in December, 1807, being then indebted to the complainant, and others, to a very large amount; and being at that time also possessed of a large personal estate, and of a considerable amount of real estate, a part of which had been previously mortgaged to Cornelius Ray and others ; that John and Abraham Franklin had divested themselves of all that real and personal estate, by conveying the same in trust to their friends, without consideration, and for the sole purpose of #preventing such property from being reached by judgment and execution, and that the mortgaged premises, and divers lots in the city of New-York, in particular, had been conveyed to Henry Franklin. They would also have found that by such bill the complainant asked for a discovery as to the whole, or any part, of the real estate which had been conveyed to H. Franklin, or others, after the failure, and to whom in particular the same had been thus conveyed. That the complainant prayed that all the real and personal estate which had been conveyed by J. and A. Franklin, after they so stopped payment, might be applied to the payment of his demands. That he also prayed that all such grants, conveyances and transfers might be decreed to be delivered up and cancelled ; that he might be permitted to redeem the mortgaged premises, and that he might have such other and further relief as the case made by his bill entitled him to ask of the court. By thus comparing these allegations in the bill, and the prayer thereof, with the date of the deed under which they were about to take title from Henry Franklin, the persons holding these contracts would have seen that the lands mentioned in that deed must be a part of the lands which, by the bill, were charged to have been thus fraudulently conveyed by J. and A. Franklin to some of their friends, after their failure, and for the purpose of protecting it from the judgments and executions of their creditors; and consequently that this conveyance to H. Franklin was fraudulent and void, as against the complainant’s judgments, and might be set aside by the decree of the court in that suit. I am satisfied, therefore, that they are legally chargeable with constructive notice of the pendency and object of the chancery suit, so far as it could affect these two lots. The conveyances from Henry Franklin to them, and their subsequent conveyances to Parks were therefore void, so far as regards the lien of Hendrick’s judgments upon the legal interest of J. and A. Franklin in the two undivided third parts of those *456 lots. If, then, there are no other difficulties in the way, the lessor of the plaintiff was entitled to a judgment on the special verdict for that portion of the premises.
There is no foundation for the supposition that the rights of the lessor of the plaintiff were barred by the statute of limitations, *at the time of the commencement of this suit, in 1829. Where a vendee goes into possession of land under a contract to purchase, he becomes a tenant at will to the vendor, and his possession can never be adverse to that of his -landlord, or his assigns, or legal representatives, while he is in possession, and claiming to hold under such contracts. This was the situation of the vendees in the present case, at least until they attempted to obtain title under the conveyances of Henry Franklin, and that was within twenty years of the time of the commencement of this suit. If the whole purchase money had been due more than twenty years, and there was no evidence of the existence of the debts during that period, probably the jury might presume payment of the purchase money; and might also presume a conveyance of the lands to the purchasers, in conformity with the original agreements. Such presumption, however, could not be made in this case, because the last payment on Bough-ton’s contract did not become due until 1811, and it is expressly found, by the jury, that nothing had been paid on Rowley’s contract at the time of the conveyance by Franklin and Embree to him, in November, 1810.
I am also inclined to think that there was not such an adverse holding of the premises by Parks, in July, 1826, as to render the partition deed of that date void or in operative, as it respects Tibbits’ interest in these lands under the sheriff’s deeds. All the conveyances subsequent to the date of the contracts being rendered absolutely void, as against the lien of the judgments, by the operation of the Us pendens and the decree of the court of chancery, and the sheriff’s deed having relation back to the date of the judgments, Parks must be deemed to have entered under Rowley and Boughton as the assignee of their equitable interests in these contracts. I think the legal effect of all these proceedings was to constitute Parks a tenant at will to Hendricks and Tibbits, as the purchasers of the legal estate of the devisees of S. Franklin, under the judgments against such devisees. The reasons upon which the statute, prohibiting the sale of lands held adversely, is founded, do not appear to be applicable to the case of an *occupant who holds in such a manner that he is bound to surrender his possession to the vendee, without questioning his legal title thereto ; and where such vendee takes his conveyance, on such sale, subject to all the equitable claims of such occupant, cessante ratione legis, cessat ipse lex.
Upon the legal merits of this case, therefore, and considering that the equitable rights of these parties cannot be decided in an ejectment suit, I must vole for an affirmance of the judgment of the supreme court. If Parks is compelled to resort to the court of chancery to protect his equitable rights, where alone they can be protected agreeably to the settled law of the land, there will be no difficulty in administering justice between these parties in reference to their respective equitable rights.
By Senator Seward. After a careful examination of the several points discussed in the argument of this cause, I have come to the conclusion that the judgment of this court must depend upon the question, whether the principle of Us pendens applies, so as to avoid the deeds executed by Henry Franklin.
The supreme court, in delivering their opinion in this cause, seem to have considered themselves concluded by their previous judgment in the cause of Jackson, on the demise of the same lessor, against Andrews, 7 Wendell, 152 *458 A manifest distinction, however, appears between the two cases as reported. In that case an entire purchase was made during the pendency of the suit in chancery, while in this case it appears that long before the bill in chancery was filed, or the frauds complained of were committed, the persons under whom the plaintiff in error holds, had made contracts with the true and undisputed owner of the premises, had entered into the possession thereof, and had made improvements thereon, and the deeds subsequently executed pendente lite by Henry Franklin, who had the legal title, were in compliance with these contracts. The supreme court notice these facts, but say that the same state of facts was presented in the case of Jackson v. Andrews, although they are not mentioned in the report of that case. It was suggested on the argument, that the supreme court were incorrect in point of fact in this statement, and
that it Appeared, in the case of Jackson v. Andrews, that no contracts had been executed prior to the commencement of the suit in chancery. However this may be, certain it is, that the question presented in this cause was not discussed in the case of Jackson v. Andrews, and does not appear to have been deliberately examined in this case. I have alluded to that case for the purpose of explicitly stating, that while I cannot sustain the judgment in this cause, I see no necessity of disturbing the judgment pronounced in that, as the case stands reported.
The rule of Us pendens, although well settled, is in all the reported cases admitted to be harsh, and justifiable only on the ground that individual rights must sometimes be made to yield to rules established for general convenience. I may add, that general and well established as the rule is, it is not without exceptions—exceptions arising from the very excess of hardship, as applied to cases of peculiar character. Chancellor Kent, in his luminous opinion in the case of Murray v. Lilburn, 2 Johns. Ch. R. 444, laid down the rule and enforced it in the strong language of the Lord Chancellor in Ireland. 2 Ball & Beat. 167. “ The rule of this court undoubtedly is, that any interest acquired in the subject matter of a suit pending the suit, is so far considered a nullity that it cannot avail against the plaintiff’s title; and if this rule were not attended to, there would be no end of any suit; the justice of this court would be evaded, and great hardship and inconvenience to the suitor necessarily introduced. It is extremely difficult to draw any line, and very dangerous to allow of the rule being filtered away by exceptions.” “ Nevertheless,” continues Chancellor Kent, “ I am not prepared to say the rule is to be carried so far as to affect commercial transactions. The safety of commercial dealing would require a limitation of the rule ; but bonds and mortgages are not the subject of ordinary commerce.” In my judgment, the application of the rule in a case like the present would be unjust, and could be sustained upon no grounds of necessity or general convenience. It is but a few years since the greater part of the whole territory of this state was in a wild and uncultivated condition, and of comparatively very small value. Large Tracts of land still remain in the same condition. The history of the state and of the whole country shows that the only manner in which this wilderness was thus far reclaimed,was by the purchase of small quantities of land by contracts preliminary and conditional; by virtue of which the purchaser entered into possession, proceeded to erect his dwelling, gradually removed the forest, and derived from the soil itself the means of paying the purchase money. Thus, by performing his contract, he secured to himself the legal title of the land, of which, from the moment he entered into possession, he was regarded as the owner, subject to the liability of eviction on failure to perform his contract; and with some reason was he so regarded, for long before the expiration of his contract, by *460 the investment of his labor and his improvements, the land was enhanced in value, sometimes quadruple, and sometimes ten fold, beyond the contract price. Hence it was that there were sales of what are called these “ improvements,” which sales, in the estimation of the contracting parties at least, were something more than the mere assignment of contracts or chooses in action, securing upon condition the title of wild land. This mode of tenancy and purchase of land is new and peculiar to a country where exigencies are such as ours. It has no precedent in the legal history of that country whence the rule of lis pendens and our whole jurisprudence was derived—a country where, instead of inviting and encouraging the alienation of lands and the subdivision of estates, the policy of government has always been, and still is, to confine the rights and immunities arising from the proprietorship of real estates to a favored few. To extend to these pioneers of civilization the rule of Us pendens, so as to deprive-them of property thus honestly and painfully acquired by years of persevering industry and self denial, may in some cases be necessary for general convenience ; but where that necessity is not absolute, and that convenience not most obvious, and where discretion is left to me by the absence of authority, it will require, to induce my consent to the application of the rule, an argument more eloquent even than that of the distinguished jurist who has so ably explained and defended it in the case of Murray v. Lilburn.
*1 proceed to examine whether such an application of the rule is necessary, or whether a discretion is left to us in regard to the case now before the court; and I remark, in the first place, that we have the highest authority for considering the rule as not an arbitrary one, which must continue to be applied in all cases, although the reasons for its original adoption may not exist. So this court decided in the case of Hopkins v. M'Claren, 4 Cowen, 678. The reason of the rule in the leading case of Murray v. Lilburn, before cited, is admitted to be, that if it were not applied, “ there would be no end to any suit, the justice of the court would be evaded, and great hardship and inconvenience to the suitor would necessarily be introduced.” In the case of Murray v. Ballou, 1 Johns. Ch. R. 577, Chancellor Kent says, in assigning the reasons of the rale, “to bring home to every purchaser, the charge of actual notice of the suit must, from the very nature of the case, be in a great degree impracticable.” The only safe and efficient means of preventing such fraud and injustice, is to charge the purchaser with dealing at his peril. In the case of Hopkins v. M'Claren, before cited, Senator Golden states the reason of the rule to be, that “ if a transfer of interest pending a suit were to be allowed to affect the proceedings, there would be no end to litigation ; for as soon as a new party was brought in, he might transfer to- another, and render it necessary to bring that other before the court, so that a suit might be interminable.” That such is the true reason of the rule was not questioned in the argument of this cause, nor is it controverted in the books, and is therefore here assumed. We are then advanced thus far in the consideration of the question ; we have ascertained what is the true reason of the rule, and that it is not necessary to be applied where that reason fails. The same authority, last cited, (Colden’s opinion in the case of Hopkins v. M'Claren,) adds, “This reason has no application to a third person, whose interest subsisted before the suit was commenced, and who might have been made an original party.” Assuming the principle here asserted, it remains for me to show that the persons in possession of the premises in question, by virtue of the contracts for purchase at the time of the commencement of the suit in chancery, had such a subsisting *interest that they might have been made parties to the suit. The possession of land, even the naked possession, without title or *461 pretence of title, is a subsisting interest of some value and estimation in the view of the law. In the absence of title, or right of possession in a plaintiff, the possession of the defendant is a good defence, although the title may be in a third person. So no person can be evicted from the possession of land, by the judgment or decree of any court in a cause wherein he was not made a party, if in possession at the time of the commencement of the suit. And why ? Because he has an interest, and shall have a day in court to assert it. What I have thus far said is by way of illustration, and to support the proposition that if the tenant had any interest at the time of the commencement of the suit, which it is sought to affect by such degree or judgment, and if the nature of the suit is such that he can be a party, such interest shall not be affected unless he be made a party. Let us now inquire what was the situation of the tenants in possession, at the time Hendricks filed his bill in chancery ; what was their interest, and what were their rights, and how it is contended they are affected by the decree of the court of chancery. This inquiry may enable us to determine the important question whether they ought to have been made parties. They had, several years before the bill was filed, made contracts with the true owner for the purchase of the premises in question; by which contracts they were authorized to enter into possession, and had entered immediately, and were in possession at the commencement of the suit. By those contracts, they had been bound to pay the purchase money, in instalments of different sums, through a series of years, which had not expired when the suit was commenced; in the one case a new contract had been executed in continuance of the first, and a part of the purchase money actually paid; in both cases the tenants were bound by the contracts to make an actual settlement upon the premises, and build a dwelling house thereon, within three years from the date of the contracts. This latter condition had been performed, but in both cases there had been default suffered, by failure to make the payments according to the terms of the contracts. Such was the situation *of the tenants. What were their rights and interests 1 As against Henry Franklin, who had now become possessed of the legal title, the right to perform their contracts and to demand deeds for the premises, and in case of his refusal, then to a decree for specific performance. It is unnecessary here to go into a critical examination of the cases in which equity would decree a specific performance.
The part performance of the contract, the making of improvements with the knowledge of the vendor, which I think in this case we may presume, are always prominent grounds to entitle the purchaser to this relief; and it is well settled that failure to make payments at the day is not in such cases a material objection. But it is not the rights which they could have enforced as against Henry Franklin, so much as their rights which they could, by virtue of their contracts and in performance of them, acquire against the complainant in the chancery suit, which, it seems to me, ought principally to be regarded in this view of the case. What was the situation relative to him ? In possession of the land by contract from the true owner, bound to perform their contract with Henry Franklin, who had become seised of the legal title, they had a right to do what they were legally bound to perform, that is, to pay the amount due on their contracts, and receive deeds which would pass the legal title. On the other hand, the complainant, in relation to them and Henry Franklin, stood challenging the title of Henry Franklin as fraudulently obtained, denying his right to receive the purchase money and the validity of a deed executed by him ; not, however, impeaching the original contracts, but admitting the validity and claiming only the right to be substituted in the place of Henry Franklin, under all *463 the legal obligations devolved upon him, and entitled to all the legal advantages resulting to him in relation to the tenants by those contracts. Such were the relative situations of these parties at the time of the commencement of the suit. I understand it to be conceded, that the decree of the court of chancery in that suit can affect no legal or equitable interests of the tenants existing at the time of its commencement, inasmuch as they were not parties ; and it is insisted, that, by the application of the doctrine of Us pendens, no such interest *is affected. Is this position just ? Are not the rights of the tenants affected by the application ? The complainant in that suit, now holding the chancellor’s decree, says to the tenants, “ It is true you had a right to perform your contracts with Henry Franklin; you had a right to pay the purchase money, and to take a legal title for the lands, in pursuance of the contracts ; you had even a right to compel a specific performance of the contracts ; but by the force of this decree, your rights thus perfected are unavailing, your money thus paid is paid in vain, your deeds thus obtained are a nullity, and the specific performance thus voluntarily made by Franklin, leaves you in the same state as if it had not been conceded or coerced.” It is true, he admits that he is substituted for Henry Franklin, and that if they were entitled to a specific performance against Franklin, they are still so entitled as against him, and should have filed or may yet file their bill against him. But is it not solemn mockery, to say that their rights and interests, as they existed at the time of the commencement of the suit, have not been affected, when, in the very manmer prescribed by the contracts, they have paid to Henry Franklin the whole purchase money and obtained his title, wbhich, but for the decree in chancery would be a good title for the premises ? It appears, then, that the tenants had, at the time of the commencement of the suit, a subsisting, though inchoate right in the premises, which, if the rule of Us pendens be applied to them, has been affected by the decree so far that their right thus inchoate, when perfected during the pendency of the suit, has been perfected in vain, and they are at law absolutely divested of their entire interest in the premises, although, but for the effect of the Us pendens, their title, acquired by virtue of and in pursuance of their previous contracts, would be absolute.
And now let us next see how far the reason of the rule of Us pendens applies, so as to justify this admitted hardship. That reason is the convenience of suitors, and the impracticability of making every person a party to a suit who may purchase or obtain an interest in the subject matter pendente lite. But was there any inconvenience in making these tenants parties when the suit was commenced ? Was not their possession ^notorious ; and is it not a well settled principle of law, that possession of land is notice to all the world, requiring those who would concern themselves in it, or litigate for it, to take notice, not only of the possession itself, but of the right, title, and interest, whatever it may be, of the possessor 1 Is it not far more equitable and just to require the complainant thus to take notice of such an obvious notorious interest, than to hold the humble tenant, located in the woods in the extreme western part of the state, to search the office of the register or assistant register in chancery, at Albany or New-Yorlc, every time an instalment becomes due on his contract, to see if peradventure a bill may not have been filed by some creditor, heir, or devisee, which may by posibility involve the vendor’s title ?
The reason of the rule is, to subject persons, who intrude into controversies litigated in the courts, to the peril of the litigation. But who has intruded here ? Who claims an interest in the premises now that was not claiming ; aye, openly, notoriously, and in the face of the world, claiming when the suit in chancery was commenced, and in possession too under his claim 1 Is such a *465 person, thus situated, to be treated, as an adventurer, an intruder into litigation 7 I am sure that he cannot morally, and I think I shall be able to show he ought not legally to be so regarded. It remains yet to be proven that the interest of the tenants was such that they might have been made parties to the suit in chancery. It was forcibly urged in the argument, and scarcely answered to my satisfaction, that the tenants could not have been made parties to the chan eery suit, because there had been no sale on the complainant’s execution; and until such sale, it could not be known that the execution would not be satisfied out of personal property of the defendant, or of other real estate of Henry Franklin or the other defendants. But, on mature reflection, I am convinced that a bill could have been framed, (and if it could have been, then it was the duty of the complainant so to have framed his, if he would have the advantage of it,) so as to meet the exigencies of this very case. It would only have been necessary, as the court of chancery has power not only to pronounce decrees, so as to render judgment for the immediate *accomplishment of justice, but is clothed with ample powers for the prevention of injustice and prospective accomplishment of justice, to set forth, in addition to the facts contained in the complainant’s bill, that it was doubtful whether, out of the other lands which were bound or might be bound by the judgment of the complainant, his execution could be satisfied. Let us suppose (and the supposition is pertinent) that the lands now in litigation were all the lands in question in the chancery suit. The objection I have adverted to would not then exist; and would it in that case be pretended that the bill would not be properly framed, if it charged the making of the contracts by Samuel Franklin, the possession and part performance by the tenants, the fraudulent alienation by the devisees of Samuel Franklin to Henry Franklin, and prayed ad interim an injunction against Henry Franklin to restrain him from receiving, and the purchasers from paying the purchase moneys ; that the moneys due on the contracts, if paid, should be paid into court; and if not paid, that the lands should be sold on execution, and for relief generally ; besides, it seems to me that it ought not to be allowed to the defendant in error, the complainant in the chancery suit, while insisting upon the effect of the decree, as indirectly avoiding the rights of the tenants acquired in pursuance and by performance of these contracts to say, that he could not by making them parties have entitled himself directly to the same relief.
I have next to observe, that although I am satisfied the defendant in error might properly, and therefore ought to have made the tenants parties to the chancery suit, it does not appear to me that the case necessarily turns upon that point. The complainant below filed his bill to set aside a fraudulent conveyance. Having succeeded in obtaining a degree by which that conveyance was set aside, he brings his action of ejectment against the tenants holding under a conveyance from the fraudulent grantee. They could defend only as bona fide purchasers, and every act done by them to perfect a title after notice of the fraud would have been affected and invalidated by the fraud. Had the complainant, when he neglected to make the tenants parties, given them actual notice of the fraud alleged, they would have proceeded at their peril in the further performance of their contracts. In the view I *have taken of the question, whether the tenants ought to have been made parties, I am met by the objection, that if, instead of a suit in chancery, there had been an action at law in which the question of fraud had been tried, then the tenants, from the nature of the action, could have been made parties. This objection needs no other answer than that in order to take this case out of the rule of lis pendens, it is only necessary that the persons sought to be affected by the *466 decree should have had a subsisting interest in the premises, and might have been made parties in the suit; all which, I trust, I have satisfactorily esta blished.
J consider myself well supported, in the view I have taken of this case, by the circumstance that I have not found, nor has there been shown to the court a solitary case, in which the rule of Us pendens has been applied to a person who purchases by contract, and enters into possession and in part performs his contract before suit commenced, and then pendente lite without actual notice fulfils his contract and takes a deed for the land. In the case of Murray & Winter v. Ballou & Hunt, before cited, the entire contract and purchase were made after the suit was commenced ; the defendants having had no previous tenancy of, or interest in the premises. The facts were in this respect similar in the case of The same complainants v. Lilburn and others, 2 Johns. Ch. R. 441. So, also, in the case of Martin v. Styles, 11 Ves. 200, the case of Culpepper v. Austen, 2 Ch. Cas. 115, 221, and the several cases in Vernon’s R. cited by Chancellor Kent in Murray & Winter v. Ballou & Hunt. The same observation applies to the case of Jackson v. Ketchum, 8 Johns. R. 479. In this country, then, the question which owing to circumstances before cited being one of immense importance, is new. In England such a case is not likely to have occurred, as contracts similar to those presented in this case are almost, if not altogether unknown in that country, where the possession during an executory contract generally remains with the vendor. In accordance with the view I have taken of this case, is the spirit of the statute requiring a notice of the Us pendens in chancery suits to be filed in the county clerk’s office. While I rejoice, that owing to *the provisions of that statute, cases of this severe hardship can seldom arise in future, I deem it consistent with all past adjudications on this subject to decide that the rule of Us pendens is not applicable to the case under consideration. I am therefore of opinion that the judgment of the supreme court should be reversed.
Should it become necessary, in the opinion of the court, to pass upon the validity of the deed executed by the sheriff of Ontario on the judgment against John Franklin, I am of opinion that it was void, because, on its face it appears to have been executed before the expiration of the time allowed by the statute for the redemption of the premises. Until the expiration of that time, the sheriff has no power to execute a deed; and although, in the case of a private individual, or party, a deed thus executed would convey a title subsequently acquired, we are without warrant for saying that a deed, executed by a public officer without authority, shall take effect afterwards when that authority may happen to be devolved upon him.
On the question being put, Shall this judgment be reversed ? all the members of the court, (20 in number,) with the exception of the Chancellor, voted in the affirmative: the Chancellor voting in the negative.
Whereupon the judgment of the supreme court was reversed, with costs, and directions given that judgment be entered in the supreme court for the defendant, with costs; such costs to be paid by the lessor of the plaintiff.